## Batchelder *v.* Sanborn.

If the owner of land assist as a laborer to build and repair a dam, which, when built, he knew would flow his land, and say that the mills would be a benefit to the neighborhood, and urge the other workmen to make the dam tight, these facts will not of themselves estop him to claim damages for flowing his land by the dam.

They constitute evidence, but not conclusive evidence, of a license to build and maintain the dam.

Case, for flowing the plaintiff's land by a dam. For a long time before, and until 1829, those under whom the defendant derived his title had been accustomed to flow the plaintiff's land in spring and autumn, drawing off the water during the summer. In that year and the next the defendant took away the old dam and built a new one of stone, and put up valuable mills, to be operated through the entire season. In 1830 portions of the top of the dam were carried away, and were replaced by the defendant, or those whom he employed. The plaintiff was present several times during the construction of the dam; knew that the dam, if built, would cause the water to flow his land, and that it was intended to keep up the water through the whole season. With the same knowledge, in the spring of 1830 he worked for the defendant in making the repairs, and, in the

autumn, for those whom the defendant employed to repair the dam, two or three days on each occasion. Both during the building and the repairing of the dam the plaintiff mentioned to workmen employed upon it, that the mills would be a benefit to the neighborhood in which he lived, and urged the other workmen to make the dam tight. There was no evidence that during this time he said to the defendant that he must not proceed with the work.

The defendant contended that under these circumstances the plaintiff was estopped to recover for flowing caused by the dam.

The court instructed the jury that such facts would not of themselves alone estop the plaintiff; that they tended to prove a license, but were not conclusive proof of one; and that, if upon all the evidence they should find a license, the defendant would be entitled to a verdict. The court also instructed the jury that it was not necessary for the defendant to prove an express license, nor that the word license was used between the parties, but that if the defendant understood from the plaintiff's language and conduct that he had the plaintiff's permission to flow the land, and the plaintiff intended that he should so understand him, there was a license.

The jury found a verdict for the plaintiff, which the defendant moved to set aside on account of these instructions.

*Bartlett*, with whom was *Bellows*, for the defendant.

1. This case is not within the statute of frauds, for here is no question of a permanent right, but whether the plaintiff is not estopped by his conduct from complaining of the dam and the flowage.

Where acts are done or statements made by a party, the efficacy or truth of which it would be a fraud on his part to deny, the character of an estoppel is given to what would otherwise be mere matter of evidence. 2 Smith's Leading Cases 531, 544; Angell on Watercourses 367, 371; 1 Greenl. Ev., § 204, and note. This doctrine has been fully recognized in New Hampshire, (*Barron* v. *Cobleigh*, 11 N. H. Rep. 561,) even where

the statute of frauds would seem in opposition. *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. Rep. 102; *Farrar* v. *Farrar*, 4 N. H. Rep. 191.

There need not have been a fraudulent intent at the time of doing the acts; and the admissions may be implied from the conduct of the party. It is sufficient, if setting up that to which the estoppel is a bar would in *its effects* operate as a fraud. *Staples* v. *Farnsworth*, 6 Mass. 632; *Northwood* v. *Durham*, 2 N. H. Rep. 242; *Tappan* v. *Bellows*, 1 N. H. Rep. 103; *Horn* v. *Whittier*, 6 N. H. Rep. 88; *Davis* v. *Sanders*, 11 N. H. Rep. 262; *Cox* v. *Buck*, 3 Strob. 371; 3 C. & H.'s Phil. Ev. 367; 1 Greenl. Ev., § 204, and note 3; 2 Smith's Leading Cases 532, 534. Such is the estoppel of the tenant to deny his landlord's title. *Gray* v. *Johnson*, 14 N. H. Rep. 421. And the estoppels by receipts to officers, by the acceptance of bills and the indorsement of notes, are by implication, and independent of fraud in intention.

Here the plaintiff stood by and saw the defendant laying out large sums of money in the erection of a permanent dam, which the plaintiff knew would be a nuisance to his land. He made no objection, but encouraged the work, and afterwards helped restore it. For the plaintiff now to deny a license would be against good faith, and in its effects, an injurious fraud upon the defendant. 2 Smith's Leading Cases 511. The verdict has no bearing here, for this is a question for the court. *Lewis* v. *Carstairs*, 5 Watts & Serg. 209. This conduct unexplained might lead a reasonable man to suppose he had a license. *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. Rep. 102; *Doe* v. *Wilson*, 11 East 56. The defendant must be presumed to have acted on the faith of the supposed license; and as the denial of a license would now be injurious to the defendant, this case falls precisely within the doctrine laid down by *Bronson*, J., in *Dezell* v. *Odell*, 3 Hill 222.

2. Equity interferes to enjoin parties from setting up a legal claim or right, on exactly the same grounds on which the law raises an equitable estoppel. Angell on Watercourses 359, 364.

And it has so interfered in cases like the present. Angell on Watercourses 359 and 360, citing *Short* v. *Taylor ; Anonymous*, 2 Eq. Cases Abr. 523; *Jones* v. *Royal Canal Co.*, 2 Molloy 303; *Williams* v. *Earl of Jersey*, 1 Craig & Phil. 97. The law, being then perfectly adequate to relieve this defendant, will not send him into chancery.

3. The plaintiff's working on the dam was a license in law. If there was any tort, it was in the unlicensed erection of the dam; for by implication the case finds that it would flow the defendant's land. *Sargent* v. *Stark*, 12 N. H. Rep. 332. By joining in the erection, the plaintiff must be deemed to have extinguished his claim for damages on all concerned in the work.

This act of the plaintiff was a consent to the erection, and, as he knew the consequences, a consent to those consequences. A consent to the flowage is a license, which is valid till revoked.

*Pierce & Minot*, for the plaintiff.

1. The circumstances found in this case do not make an estoppel *in pais* against the plaintiff's denial of a license.

The general principle deducible from the authorities seems to be, that to make the acts or admissions of a party conclusive against him, it must appear that they were expressly designed to influence the conduct of another, and did so influence it; and a denial would operate to his injury, and in good conscience and honest dealing the party ought not to be permitted to gainsay them. *Canal Co.* v. *Hathaway*, 8 Wend. 483; *Brewer* v. *B. & W. Railroad*, 5 Met. 478; *Sparhawk & als.* v. *same*, 5 Met. 469. And there must be fraud or such gross negligence as in law amounts to fraud. *Brewer* v. *B. & W. Railroad*, above cited. And it must appear not only that the acts, &c., were intended to influence the conduct of the other party, but also that he acted on the faith of them. *Wallis* v. *Truesdell*, 6 Pick. 456. Also, that the circumstances were such that the other party could reasonably act on the faith of them. *Tuft* v. *Hayes*, 5 N. H. Rep. 452.

In this case, none of the foregoing requisites appear. So far

Batchelder *v.* Sanborn.

from appearing clearly that the plaintiff designed to influence the conduct of the defendant, or that the defendant *was* so influenced, it cannot be fairly inferred from the facts stated.

The defendant could not have been influenced to the *commencement* of the erection of the dam by any of the circumstances on the part of the plaintiff stated in the case, because those circumstances did not occur till after the work was in progress.

Nor could he have been so influenced in the *manner* of the work, because, as the case shows, it was then settled how the defendant would build, and he built accordingly.

The circumstance that the plaintiff assisted in repairs of the dam in 1830, could not have influenced the defendant. He built the dam the year before.

And the defendant could not have reasonably acted in such a work, with reliance on the circumstances stated in the case, as a license.

The circumstances of the case do not present near so strong grounds for an estoppel as those in the cases above cited, and in those cases it was held that they did not create an estoppel. See, also, *Whitaker* v. *Sumner*, 7 Pick. 551.

The case of *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. Rep. 102, is directly in point; also *Eaton* v. *Rice*, 8 N. H. Rep. 378. In these cases, presenting circumstances similar to this, the question of a license was submitted to the jury.

2. The tort for which the plaintiff seeks a remedy in this action is not the building of the dam. That was no tort. It was built on the defendant's own land, where he could rightfully build.

In that, the case finds that the plaintiff assisted.

But it is the tort in the subsequent management of the water by means of that dam, so as to flow the plaintiff's land, of which the plaintiff complains. *That* was not the act, nor the necessary consequence of any act of the plaintiff. It was the defendant's own wrong. He could and should have drawn off the water by the waste-gates and the gates to the mill.

The reasoning of the court in *Sargent* v. *Stark*, 12 N. H. Rep. 335, is directly applicable to and decisive of this point.

PERLEY, J. The plaintiff was present several times during the construction of the dam ; worked for the defendant in making the repairs ; knew that the dam when put in use would flow his land ; that the intention was to keep up the water during the whole year ; there was no evidence that he forbade the defendant to proceed with the work ; and he said to third persons that the mill would be a benefit to the neighborhood, and urged the workmen to make the dam tight.

The court charged the jury that this was evidence, but not conclusive evidence, of a license : That if the defendant understood from the plaintiff's language and conduct that he had the plaintiff's permission to flow the land, and the plaintiff intended he should so understand, there was a license ; that if on all the evidence they should find a license, the defendant was entitled to a verdict.

When a party is proved to have used certain language in a verbal conversation, it has been held in this State that the court will give a legal construction to the language used, as they would if the same terms were found in a written agreement. In this case, if the evidence shewed that the plaintiff, in a conversation with the defendant, used certain language, which, if reduced to writing, would amount to a license, the court should have instructed the jury that if they found as matter of fact the language was used, it amounted to a license. *Sampson* v. *Eastman*, Grafton county, not yet reported.

But the case does not state evidence which proved or tended to prove that any language was used by the plaintiff to the defendant, which, if reduced to writing, would have amounted in law to a license. It was properly left to the jury to draw the inference, as matter of fact, whether it was understood by the parties that a license was given. *Enfield* v. *Day*, 7 N. H. Rep. 457.

The defendant contends that the facts stated in this case estop the plaintiff to recover for flowage caused by this dam.

Taking the fact to be established, that the dam in question was built by the license of the plaintiff, if the question were still an open one in this State, the confused and somewhat conflicting state of the authorities, and the learned argument of the defendant's counsel would require a more extended examination of the question than we propose to give it at this time. But we understand that question to have been settled in the case of *Carlton* v. *Reddington,* 1 Foster 291, after a very thorough and satisfactory examination of the authorities. In that case the defendants offered evidence that before they built the dam complained of, the plaintiff agreed verbally that it might be built and maintained as they afterwards built and maintained it. We are unable to distinguish that case from this. In this case there was no concealment of the plaintiff's title, or of any fact bearing on the question. The defendant must rely on a simple license, or on an agreement, which, not being in writing, is void by the statute of frauds. In such case the doctrine of estoppel *in pais* does not apply. *Wilton* v. *Harwood,* 23 Maine 131.

*Judgment on the verdict.*